## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                       )
**CERNER MIDDLE EAST LIMITED,**        )
**a Cayman Islands Exempted Company,** )
                                       )
  **Plaintiff,**                       )
                                       )        **Civil Action No.**
  **v.**                               )        **16-11984-FDS**
                                       )
**AHMED SAEED MAHMOUD**                )
**AL-BADIE AL-DHAHERI,**               )
                                       )
  **Defendant,**                       )
                                       )
  **and**                              )
                                       )
**ABDULLA AHMED AL-BADIE**             )
**AL-DHAHERI,**                        )
                                       )
  **Defendant/Reach and Apply**        )
  **Defendant.**                       )
_____)

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS

**SAYLOR, J.**

This is an action for recognition and enforcement of a foreign arbitral award.  Plaintiff

Cerner Middle East Limited has brought suit against two individuals, Ahmed Saeed Mahmoud

Al-Badie Al-Dhaheri ("Ahmed Dhaheri") and his son, Abdulla Ahmed Al-Badie Al-Dhaheri

("Abdulla Dhaheri").  The complaint alleges that Ahmed Dhaheri owes Cerner more than $62

million pursuant to an arbitral award issued by the International Court of Arbitration of the

International Chamber of Commerce ("ICC").  The complaint further alleges that Ahmed

Dhaheri fraudulently transferred a joint interest in a condominium located at 29 Otis Street in

Cambridge, Massachusetts, to his son six months after the issuance of the award, and that the

pair later transferred the property to a third party for $990,000.  Cerner seeks damages from

Ahmed Dhaheri and to reach and apply the proceeds from the sale of the 29 Otis Street property.

Defendants have moved to dismiss the complaint for lack of personal jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(2).[1]  For the following reasons, the motion will be denied.

## I.   Background

### A.   Factual Background

Plaintiff Cerner Middle East Limited is a foreign company organized under the laws of

the Cayman Islands, with a principal place of business in Kansas City, Missouri.  (Compl. ¶ 2).

Defendants Ahmed Dhaheri and his son, Abdulla Dhaheri, are both residents of Abu Dhabi,

United Arab Emirates, and are U.A.E. citizens.  (*Id.* ¶¶ 3–4; Ahmed Dhaheri Decl.).  Ahmed

Dhaheri is one of two members of iCapital, LLC, which is a U.A.E. limited liability company.

(Ahmed Dhaheri Decl.)

#### 1.   Arbitral Award

In 2008, iCapital and Cerner entered into a $94 million contract concerning the

development of a medical information technology platform in the U.A.E.  (Compl. ¶ 5).

According to the complaint, iCapital promptly defaulted on its payment obligations under that

contract.  (*Id.* ¶ 15).

On December 29, 2012, after a series of amendments to the contract, iCapital and Cerner

entered into a Settlement and Payment Agreement ("SPA") and a Fifth Amendment to the

contract.  (*Id.* ¶¶ 19–22; Hadas Decl., Ex 3; Hadas Decl., Ex. 4).  The Fifth Amendment provided

that "in the event of a dispute" the parties to the contract would submit to a "binding arbitration

---

[1] Defendants have also moved to dismiss for insufficient service of process pursuant to Fed. R. Civ. P. 12(b)(5).  However, at oral argument, defendants conceded that the Rule 12(b)(5) motion was premature as Fed. R. Civ. P. 4(m) does not provide a time limit for service of process in a foreign country.  Defendants have agreed to hold that motion in abeyance.

under the Rules of Conciliation and Arbitration of the International Chamber of Commerce."
(Hadas Decl., Ex. 4 § 9.3).  The SPA is governed by Missouri law, as is the underlying contract.
(*Id.* § 14; *Id.*, Ex. 2 § 9.14).  Cerner and iCapital, but not Ahmed Dhaheri, are signatories to the
SPA and Fifth Amendment.  (*Id.*, Ex. 3–4).

iCapital again failed to make payments in accordance with the SPA and Fifth
Amendment.  (Compl. ¶¶ 23–24).  On August 23, 2013, Cerner filed a request for arbitration
with the ICC against both iCapital and Ahmed Dhaheri.  (*Id.* ¶ 30).  In November 2014, an
arbitration hearing was held in Paris, France.  (*Id.* ¶¶ 34–35).  Neither iCapital nor Ahmed
Dhaheri appeared in that proceeding to contest Cerner's claims.  (Hadas Decl., Ex. 5 ch. 1.2.4).
On July 16, 2015, the arbitral tribunal issued a final award of more than $62 million in favor of
Cerner against iCapital and Dhaheri, jointly and severally.  (*Id.* ch. 12).  The arbitral tribunal
found that a valid arbitration agreement existed between Cerner and iCapital arising from both
the SPA and the Fifth Amendment, and that it had jurisdiction over Ahmed Dhaheri on the basis
that he was acting as the alter ego of iCapital with respect to the relevant transactions. (*Id.* ch.
12.1, 10.2.54).

## 2.   Massachusetts Real Property

In July 2007, Ahmed Dhaheri purchased a condominium located at 29 Otis Street, Unit
601, in Cambridge, Massachusetts, for $799,000.  (McGovern Decl., Ex. A).  On January 3,
2016, about six months after the final arbitral award was issued, Ahmed Dhaheri transferred the
property to himself and Abdulla Dhaheri as joint tenants with a right of survivorship for nominal
consideration.  (*Id.*, Ex. B).  On July 15, 2016, defendants sold the property to a third party for
$990,000.  (*Id.*, Ex. C).

### B.    Procedural Background

Cerner brought this action in Middlesex Superior Court on August 1, 2016.  The complaint alleges three claims arising under both federal and state law.  Defendants removed this action pursuant to 9 U.S.C. § 205, asserting jurisdiction under 9 U.S.C. § 203.  Defendants have moved to dismiss the complaint on the basis of lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

Although defendants have moved to dismiss, they have not yet been properly served with the complaint in this action.  Defendants, as U.A.E. citizens, must be served in accordance with U.A.E. civil procedure, which presents multiple "procedural hurdles."  *See Orsi v. Falah*, 2012 WL 4469120, at \*4 (D. Mass. Sept. 25, 2012), (describing U.A.E. procedures for effecting service of process).[2]  Plaintiff expects that service of process may take up to eighteen months to complete.  (Pl. Opp. 17).

## II.    Standard of Review

Plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendants.  *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 50 (1st Cir. 2002).  In considering a motion to dismiss under Rule 12(b)(2), the court may employ several standards to assess whether plaintiff has carried that burden: the "*prima facie*" standard; the "preponderance-of-the-evidence" standard; or the "likelihood" standard.  *See id.* at 50 n.5; *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145–46 (1st Cir. 1995).  Where, as here, the court is called to make that assessment without first holding an evidentiary hearing, the *prima facie* standard is applied.  *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 618 (1st Cir. 2001).  Under that standard, the court takes plaintiff's "properly documented evidentiary

---

[2] The U.A.E. is apparently not a party to the Hague Convention or any other agreement with the United States concerning service of process.  *Orsi*, 2012 WL 4469120, at \*2.

proffers as true and construe[s] them in the light most favorable to [plaintiff's] jurisdictional claim." *A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (citing *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)).  A plaintiff may not "rely on unsupported allegations in [its] pleadings."  *A Corp.*, 812 F.3d at 54 (quoting *Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 134 (1st Cir.2006) (alteration in original)).  "Rather, [the plaintiff] must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists." *Id.* (quoting *Foster-Miller*, 46 F.3d at 145).  Facts offered by the defendant "become part of the mix only to the extent that they are uncontradicted."  *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 8 (1st Cir. 2009) (quoting *Adelson v. Hananel,* 510 F.3d 43, 48 (1st Cir. 2007)).

To establish personal jurisdiction, plaintiff must show that the requirements of the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3, are satisfied, and that the exercise of jurisdiction is consistent with constitutional due process.  *Daynard,* 290 F.3d at 52; *Intech, Inc. v. Triple "C" Marine Salvage, Inc.,* 444 Mass. 122, 125 (2005).  Due process requires that a plaintiff alleging specific personal jurisdiction establish the existence of three conditions:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must be reasonable.

*Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016) (quoting *Phillips*, 530 F.3d at 27 (alterations omitted)).

## III.   Analysis

The complaint alleges three claims:  (1) a federal claim for recognition and enforcement of the arbitral award pursuant to 9 U.S.C. § 201, *et seq*, against Ahmed Dhaheri alone; (2) a

state-law claim for fraudulent conveyance against both defendants; and (3) a reach-and-apply claim pursuant to Mass. Gen. Laws ch. 214, § 3(8), against Abdulla Dhaheri alone.

Plaintiff does not contend that this Court has an independent basis for personal jurisdiction over defendants as to the federal claim; indeed, nothing concerning that claim occurred in Massachusetts.  Instead, plaintiff asserts that the Court has specific personal jurisdiction over the state-law claims and pendent personal jurisdiction over the recognition and enforcement claim.

### A.    Specific Personal Jurisdiction Concerning State-Law Claims

The complaint alleges a claim of fraudulent transfer against both defendants.  To prove a claim of fraudulent transfer under Massachusetts law, a plaintiff must prove that (1) it is a creditor and (2) defendants transferred property fraudulently, as defined by the Uniform Fraudulent Transfers Act.  *See Alford v. Thibault*, 83 Mass. App. Ct. 822, 827 (2013) (citing the Massachusetts Uniform Fraudulent Transfer Act, Mass. Gen. Laws ch. 109A, § 5).  *See also* Mass. Gen. Laws ch. 109A, § 6.

The complaint also alleges a claim to reach and apply Abdulla Dhaheri's proceeds from the sale of the 29 Otis Street property.  *See* Mass. Gen. Laws ch. 214, § 3(8).  Because that claim simply requests a remedy for the underlying fraudulent-transfer claim, the court's personal jurisdiction over that claim rises and falls with its jurisdiction over the fraudulent-transfer claim.

### 1.    Massachusetts Long-Arm Statute

Plaintiff contends that the court has personal jurisdiction concerning the fraudulent-transfer claim under three separate provisions of the Massachusetts long-arm statute, including § 3(a).  Section 3(a) states that "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a)

transacting any business in this commonwealth . . ."  Mass. Gen. Laws ch. 223A, § 3.  In order

for jurisdiction to exist under that subsection, (1) defendants must have transacted business in

Massachusetts, and (2) plaintiff's claim must have arisen from defendants' transaction of such

business.  *See Tatro v. Manor Care, Inc.,* 416 Mass. 763, 767 (1994).

Here, the fraudulent-transfer claim arises out of the transfer and subsequent sale of a

condominium in Massachusetts.  The question is whether the transfer and sale of the

Massachusetts property constitutes "transacting any business in [the] commonwealth."  Mass.

Gen. Laws 223A, § 3(a).  Courts have interpreted the "transacting any business" language of §

3(a) broadly.  *See Amstell Holding, Inc. v. SIG Combibloc, Inc.*, 2005 WL 6258671, at *4 (D.

Mass. Sept. 27, 2005).  For example, a defendant need not be physically present in a state to

"transact business" in that state.  *See Energy Capital and Services LP II v. Hill Refrigeration,

Inc.,* 989 F. Supp. 353, 355 (D. Mass. 1997).

Defendants transacted business in Massachusetts by selling property located here.

Selling Massachusetts property necessarily involves a number of activities that occur in

Massachusetts, including showing and inspecting the property as well as recording and

reviewing documents related to it.  Plaintiff has produced evidence that defendants caused

numerous legal documents to be created in Massachusetts in order to sell the condominium at 29

Otis Street, including a power of attorney, an owner affidavit, a mechanic lien certificate, and an

application to the City of Cambridge.  (*See* McGovern Decl., Ex. E-I).  Although there is no

evidence that defendants themselves were present in Massachusetts in connection with the sale,

someone had to be present in the state in order to accomplish these tasks.  Whether they were

acting through agents or personally, defendants transacted business in Massachusetts by

transferring and selling the property.  *See Haddad v. Taylor*, 32 Mass. App. Ct. 332, 336; *see*

*also Amstell Holding*, 2005 WL 6258671, at *4 (interpreting *Haddad* as standing for principle

that "negotiations by a principal's agent to purchase real estate should be considered 'transacting

business' even if the principal was never physically present in the state").

Accordingly, plaintiff has shown that the court has personal jurisdiction over defendants

under the Massachusetts long-arm statute because the fraudulent-transfer claim arises out of

defendants' transaction of business in Massachusetts. Having found that the claim satisfies the

requirements of § 3(a), the court need not address plaintiff's alternative argument that the claim

satisfies two other provisions.

### 2. <u>Due Process</u>

Plaintiffs must also prove that the exercise of personal jurisdiction over the state-law

claims comports with the constitutional requirements of "relatedness," "purposeful availment,"

and "reasonableness."

### a. <u>Relatedness</u>

To satisfy the relatedness requirement, "the claim underlying the litigation must directly

arise out of, or relate to, the defendant's forum-state activities." *Daynard,* 290 F.3d at 60

(quoting *Foster-Miller,* 46 F.3d at 144). The complaint alleges that Ahmed Dhaheri fraudulently

transferred a joint interest in his Cambridge condominium to Abdulla Dhaheri six months after

plaintiff obtained a $62 million arbitral award against him. Defendants deny that this transfer

was fraudulent, but do not deny the fact of the transfer of real property in Massachusetts. There

is no dispute that when the arbitral award issued in July 2015, Ahmed Dhaheri had full

ownership of the property at 29 Otis Street, which he purchased in 2007 for $799,000. Nor is

there a dispute that Ahmed Dhaheri transferred a joint interest in the Massachusetts property to

himself and Abdulla Dhaheri in January 2016. There is no dispute that defendants jointly held

the Massachusetts property for about seven months before transferring it to a third party for

$990,000 in July 2016.  Each time the property changed hands, activity had to occur in

Massachusetts, either through defendants' actions directly or at their direction.  *See Haddad v.*

*Taylor,* 32 Mass. App. Ct. 332, 335.  Thus, the claim for fraudulent transfer is "materially

connected to [Massachusetts] because it occurred here."  *See AngioDynamics, Inc. v. Biolitec*

*AG*, 780 F.3d 429, 434 (2015) (finding that a Massachusetts court had specific personal

jurisdiction over parent corporation defendants who were alleged to have "looted [subsidiary

corporation] by fraudulently transferring its assets out of Massachusetts").

Defendants contend that the court nevertheless lacks personal jurisdiction concerning the

fraudulent-transfer claim because it rests on an unenforceable arbitral award.  In essence, they

contend that the arbitral tribunal lacked jurisdiction to award damages against Ahmed Dhaheri

because the question of the arbitrability of a claim for breach against a non-signatory to an

agreement who is resisting arbitration must be determined by a court, and not by an arbitral

tribunal.  That argument, however, is more appropriate for consideration under a motion to

dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P.

12(b)(6).  The differences between a Rule 12(b)(6) motion and the present Rule 12(b)(2) motion

are more than formalistic.  The motions are decided under entirely different standards, with a

focus on different issues, and considering different documents.  Defendants contend that its

initial brief in this matter was sufficient to put plaintiff on notice that it was challenging the

sufficiency of the fraudulent-transfer claim, and request that the court consider the merits of that

claim within the context of its Rule 12(b)(2) motion.  *See* Def. Rep. 6.  However, because the

record and arguments have focused on the personal-jurisdiction claim, it is not appropriate to

rule on the sufficiency of the claim at this time.

Furthermore, and in any event, the parties agree that the precise issue on which defendants rest their motion—whether the arbitral award is enforceable against Ahmed Dhaheri—is currently under consideration in the District Court for the District of Oregon.  Pl. Supp. Memo. 4; Def. Supp. Memo. 2, 6.  Under the circumstances, it would not be prudent to convert the present motion into a motion to dismiss for failure to state a claim.  Because it need not resolve the issue of whether the award is enforceable against Ahmed Dhaheri for the purposes of the present motion, the Court expresses no opinion as to the merits of defendants' claim.  *Id.*

### b.  <u>Purposeful Availment</u>

A defendant's in-state contacts "must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable."  *Daynard,* 290 F.3d at 60–61 (quoting *Foster-Miller,* 46 F.3d at 144).  "The cornerstones upon which the concept of purposeful availment rest are voluntariness and foreseeability."  *Id.* at 61 (quoting *Sawtelle v. Farrell,* 70 F.3d 1381, 1391 (1st. Cir. 1995)).  "Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions of the defendant *himself.*'"  *Adams v. Adams,* 601 F.3d 1, 6 (1st Cir. 2010) (quoting *Phillips,* 530 F.3d at 28).  "The contacts must be deliberate, and not based on the unilateral actions of another party."  *Id.* (quoting *Phillips,* 530 F.3d at 28) (quotations omitted).

Again, the fraudulent-transfer claim concerns defendants' transfer and sale of Massachusetts property.  The facts giving rise to that claim establish that Ahmed Dhaheri voluntarily transferred the Otis Street property, after the arbitral award was issued, and that defendants jointly sold the property shortly thereafter.  In transferring and selling Massachusetts

property, defendants purposefully availed themselves of the laws of the Commonwealth.  In short, defendants "should not be surprised to find [themselves] in a Massachusetts court since the transaction at issue included a piece of property in Massachusetts." *Amstell Holding*, 2005 WL 6258671, at *7.

### c.   <u>Reasonableness</u>

Even if the requisite contacts exist, the court's exercise of jurisdiction must "comport with fair play and substantial justice." *U.S.S. Yachts,* 894 F.2d at 11.  The Supreme Court has identified five "gestalt factors" that bear upon the fairness of subjecting nonresidents to this court's jurisdiction. *Sawtelle,* 70 F.3d at 1394.  Those factors are "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Id.* (citing *Burger King v. Rudzewicz,* 471 U.S. 462, 477 (1985)).

First, although it would be somewhat burdensome for defendants to appear before this court, it is "almost always inconvenient and costly for a party to litigate in a foreign jurisdiction." *Nowak,* 94 F.3d at 718.  For this factor to have any significance, the defendant must demonstrate that the "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *Pritzker v. Yari,* 42 F.3d 53, 64 (1st Cir. 1994). Defendants have owned and sold property in Massachusetts, and there is evidence that Ahmed Dhaheri currently sits on the board of directors of a Massachusetts corporation. (*See* McGovern Decl., Ex. J).  Thus, there is no evidence that defendants' burden of litigating in this forum is any greater than the burden for a typical foreign defendant.  Second, Massachusetts has an interest in

adjudicating disputes arising out of the transfer and sale of real property located within the state, and in adjudicating a cause of action arising under Massachusetts state law.  Third, plaintiff, which is a Cayman Islands company with a principal place of business in Missouri, has not demonstrated why Massachusetts is a more convenient forum to adjudicate this dispute than any other forum.  Nevertheless, "a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience."  *Sawtelle*, 70 F.3d at 1395.  Fourth, defendants complain that the U.A.E. is the appropriate place to adjudicate the action for recognition and enforcement of the foreign arbitral award.  However, it is not clear that there is a forum better suited to consider the Massachusetts fraudulent-transfer claim.  Fifth, the interests of the affected governments in promoting substantive social policies are not affected.

Thus, on balance the "gestalt" factors somewhat favor plaintiff.  Accordingly, the exercise of personal jurisdiction in Massachusetts as to defendants for the two state-law claims will not offend traditional notions of fair play and substantial justice.  Because both the statutory and constitutional requirements have been satisfied, this court has specific personal jurisdiction over defendants as to the state-law claims.

### B.    Pendent Personal Jurisdiction Concerning Federal Claim

In addition to the state-law claims, plaintiff has asserted a federal claim for recognition and enforcement of the arbitral award.  Plaintiff does not contend that there is an independent basis for specific personal jurisdiction over that federal claim.  There is no question that the $62 million arbitral award is entirely unrelated to Massachusetts.  The award concerns a contract between a Cayman Islands company, headquartered in Missouri, and a U.A.E. company, to provide services in the U.A.E.  The contract applies Missouri law.  The arbitration took place in France.  The named defendants are citizens of the U.A.E.  In short, there is not a single event that

12

ties the arbitral award to this forum.

Although no independent basis for personal jurisdiction exists over the federal claim, plaintiff requests that the court exercise pendent personal jurisdiction over defendants as to that claim. *See Home Owners Funding Corp. of Am. v. Century Bank*, 695 F. Supp. 1343, 1345 (D. Mass. 1988) ("In a multi-count complaint, if a court has personal jurisdiction over the defendant with respect to one count, it has personal jurisdiction with respect to all counts."). Under some circumstances and at its discretion, a court may exercise pendent personal jurisdiction over claims that arise out of the same "nucleus of operative facts" as the claims over which the court has jurisdiction. *See, e.g.*, *Amtrol, Inc. v. Vent-Rite Valve Corp.*, 646 F.Supp. 1168, 1175 (D. Mass. 1986).

The exercise of pendent personal jurisdiction under the circumstances presented here is troublesome, to say the least. The principal issue in this dispute is the enforceability of a $62 million arbitration award. Again, that dispute has nothing whatsoever to do with Massachusetts, and this Court has no independent basis to exercise jurisdiction over that claim (or, more accurately, jurisdiction over the parties in order to resolve that claim). The state-law claims involve the sale of a $990,000 condominium, alleged to constitute a fraudulent transfer. Moreover, the parties have devoted merely two paragraphs of their more than seventy pages of briefing to the "complex and unsettled doctrine of pendent personal jurisdiction." *See Riley v. Harr*, 292 F.3d 282, 288 n.8 (1st Cir. 2002).

Rather than resolve that issue at this early stage and on this scant record, the Court will hold resolution of it in abeyance until such time as defendants have been properly served. Defendants may renew their motion at that time—with appropriate briefing—with respect to the Court's ability to assert pendent personal jurisdiction over defendants as to the recognition and

enforcement claim asserted in Count I.

### C.    Subject-Matter Jurisdiction Concerning State-Law Claims

Although the parties have only raised an issue concerning personal jurisdiction, federal courts, as courts of limited jurisdiction, have an independent obligation to assess subject-matter jurisdiction.  *In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir. 1988) (describing a federal court's obligation to inquire *sua sponte* into its subject-matter jurisdiction as "too elementary to warrant citation of authority").  Because the Court will hold the determination concerning plaintiff's federal claim in abeyance, there is a potential issue concerning the Court's subject-matter jurisdiction over the state-law claims.

Defendants removed this action pursuant to 9 U.S.C. § 205, asserting jurisdiction under 9 U.S.C. § 203.  Section 205 provides that federal courts have removal jurisdiction "[w]here the subject matter of an action . . . pending in a State court relates to an arbitration agreement or award falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards]."  9 U.S.C. § 205.  Section 205 plainly provides for removal jurisdiction over a claim brought pursuant to 9 U.S.C. § 201, *et seq*, for recognition and enforcement of a foreign arbitral award.

It is a closer question whether the Court has subject-matter jurisdiction over the state-law claims pursuant to this statute.[3]  The First Circuit has not had occasion to interpret the scope of the jurisdictional grant in § 205.  However, every circuit that has analyzed the issue has interpreted the statute as conferring broad jurisdiction on the federal courts to hear claims

---

[3] There is no independent basis for diversity jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332.  Plaintiff is incorporated in the Cayman Islands and maintains a principal place of business in Missouri. Accordingly, it is a dual citizen of the Cayman Islands and Missouri and cannot maintain an action in diversity against another foreign citizen.  *Halawi Inv. Trust, SAL v. Boston Merch. Fin., Ltd.*, 2014 WL 2515697, at *2 (D. Mass. June 2, 2014) ("[A] corporation that is incorporated abroad but maintains a principal place of business [in the United States] has dual citizenship under the diversity statute and its foreign citizenship destroys jurisdiction when there is a foreign citizen on the other side of the lawsuit.").

"whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case." *See Infuturia Global Ltd. v. Sequus Pharaceuticals, Inc.,* 631 F.3d 1133, 1138 (9th Cir. 2011) (quoting *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002)). *See also Reid v. Doe Run Resources Corp.*, 701 F.3d 840, 844 (8th Cir. 2012). In coming to that conclusion, the Fifth, Eighth, and Ninth Circuits pointed to the broad language in the statute that grants removal jurisdiction over any action that merely "relates to" an arbitral award. *See, e.g., Infuturia*, 631 F.3d 1137–38. In addition, those courts analogized the jurisdictional grant in § 205 to the bankruptcy jurisdictional statute, which contains the same language and which has been interpreted similarly broadly. *See id.* at 1138, *Beiser*, 284 F.3d at 669; *Reid*, 701 F.3d at 844. The Ninth Circuit also noted that the general thrust of § 205 confers broad jurisdiction by explicitly abrogating the well-pleaded complaint rule. *See Infuturia*, 631 F.3d 1138 (citing language in 9 U.S.C. § 205 stating that "the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal").

Accordingly, under 9 U.S.C. § 205, this Court has jurisdiction over claims where an arbitration agreement could "*conceivably* affect the outcome of the plaintiff's case." *Infuturia*, 631 F.3d at 1138 (quoting *Beiser* 284 F.3d at 669). Here, the state-law claims for fraudulent transfer and reach and apply could "conceivably" be affected by the arbitration agreement falling under the Convention. Indeed, they are premised on the validity of an arbitral award—issued, ostensibly, pursuant to such an agreement. Accordingly, the Court has subject-matter jurisdiction to consider the state-law claims under 9 U.S.C. § 205.

## IV.   <u>Conclusion</u>

For the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is DENIED without prejudice.

**So Ordered.**

/s/  F. Dennis Saylor

F. Dennis Saylor IV

Dated:  February 28, 2017        United States District Judge